FARMERS' LOAN & TRUST CO. v. METROPOLITAN ST. RY. CO. et al.

(Circuit Court, S. D. New York. September 12, 1910.)

1. STREET RAILROADS (§ 54*) — MORTGAGES — CONSTRUCTION — PROPERTY INCLUDED.

A clause in a mortgage given by a street railroad company operating an extensive system acquired largely by leases from various other companies, by which the mortgage is made to include all the railroads, contracts, and leaseholds then owned by the mortgagor, is sufficiently broad to cover an indebtedness due from a constituent company, or lessor, to the mortgagor arising under the terms of the lease, for betterments made by the mortgagor on the leased property.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 54.*]

2. STREET RAILROADS (§ 54*) — MORTGAGES — CONSTRUCTION—AFTER-ACQUIRED PROPERTY CLAUSE.

The after-acquired property clause of a street railroad mortgage construed with respect to the property subsequently coming within the mortgage thereunder.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 54.*]

In Equity. Suit by the Farmers' Loan & Trust Company, as trustee, successor of Morton Trust Company, as trustee, against the Metropolitan Street Railway Company and others. On application of complainant for supplemental decree in foreclosure. Decree granted.

See, also, 180 Fed. 637.

Bronson Winthrop, for complainant.
J. Parker Kirlin, for Metropolitan St. Ry. Co.
Masten & Nichols, for receivers of Metropolitan St. Ry. Co.

LACOMBE, Circuit Judge. The complainant (and its predecessor) brought suit to foreclose mortgage of the Metropolitan Street Railway Company to Morton Trust Company dated March 21, 1902. A large part of the property covered by this mortgage was already subject to a mortgage by the same railway company to Guaranty Trust Company, upon which suit has been brought and decree of foreclosure and sale entered. Foreclosure suit under the Morton Trust mortgage being prosecuted to final decree, and the property being described in separate lots in the form of decree submitted for signature, this court held:

"As to lots 13 to 18 inclusive it is questionable whether they are covered by this mortgage. That question should be first determined, and thereafter such items as are found to be covered can be disposed of at supplementary sale where bondholders will have abundant opportunity to buy them in. A mere reference to the description of these items, which consists merely of numerous claims and choses in action against various persons and a few bonds, indicates that their possession is in no way necessary to the operation of the unitary railway system. There is no reason why the court should delay disposing of that system and securing relief from its further operation merely because the mortgagee contends that some of these claims are covered by its mortgage. It is not intended by this reservation to delay the disposition of these questions as to lots 13 to 18. A day will be named for hearing argument upon them, and decision as to all of the disputed items may reasonably be expected before the summer vacation." Opinion filed May 31, 1910. 179 Fed. 1010.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Sale under the first mortgage having been postponed, decision as to these lots can be filed in ample time. Complainant proposes an amendment to the decree in this suit, which would allow sale to take place without prejudice to the rights of any one and postpone the decision of all questions as to these lots to some later day. But these questions have been fully argued, and they may as well be disposed of now; there will presumably be enough other questions to occupy the court's attention in the future. Moreover, if the present decision is of such a character that any one wishes to review it, that can be done at the opening of the October term of the Circuit Court of Appeals; the cause being entitled to a preference.

## Lot 14.

Lot 14 consists of:

"All the right, title and interest of the Metropolitan Street Railway Company in and to any and all claims and rights of action against the following street surface railroad companies, which accrued prior to March 21, 1902 (the date of the mortgage), and are not hereinbefore included and directed to be sold as part of the property hereinbefore described and designated as lot one, viz.: Broadway & Seventh Avenue Railroad Company (and 18 other designated companies)."

Lot 1 includes (as subdivision 2):

"All claims, demands and rights of action whatsoever of the Metropolitan Street Railway Company or its receivers against the Broadway & Seventh Avenue Railroad Company arising out of or connected with the subject-matter of said lease (that is, the lease of the latter company to the Houston, West Street & Pavonia Ferry Railroad Company, to whose rights the Metropolitan Street Railway Company had succeeded)."

Lot 1 contains also similar clauses as to 7 more of the 18 other lessor companies, namely, Eighth Avenue, Forty-Second Street & Grand Street Ferry, Ninth Avenue, Sixth Avenue, Twenty-Third Street, Bleecker Street, and Fulton Ferry, New York & Harlem.

The claims against these lessor companies are for obligations arising under the contract of lease, mainly if not wholly for money expended by the lessee in betterments on the property leased such as the installation of electric motive power, etc. They arise out of or are connected with the subject-matter of the lease. Complainants contend that they are covered by the clause in the mortgage which enumerates:

"All and singular the railroads, railroad routes, estates, leaseholds, properties, rights, privileges and franchises described as follows, to wit, * * * together with all and singular the improvements on said properties and all and singular the railroads, lands, buildings, structures, fixtures, privileges, franchises, rights of way, trackage rights, contracts, consents, leaseholds, easements and other rights and interests now owned by the railway company, * * * and also all maps, drawings, profiles, licenses, records, deeds, contracts and agreements, patents and patented inventions, and processes now owned by the railway company."

Complainant correctly states that all of the companies against which the claims enumerated in lot 14 existed were companies forming part of the railway system of the mortgagor covered by the mortgage to the complainant. All of them were leased to the mortgagor or operated under trackage agreements. All of these leases and agreements are ex-

plicitly covered by the mortgage. In each case there was physical connection between the lines owned by the Metropolitan and the lines of each of the companies respectively. A car operated over the tracks owned by the mortgagor could have passed successively over the lines of every one of these companies without leaving the rails. The whole outfit constituted a unitary railway system which was covered by mortgage. The conclusion is equally correct that:

"Contracts under which any subsidiary company is liable to the Metropolitan for equipping or improving the property of such subsidiary company are unquestionably contracts in relation to the railroad system operated and mortgaged by the Metropolitan Company."

The clause above, quoted from the mortgage, is a broad one, and the court is not persuaded that it should be narrowed so as to exclude claims arising against these lessor or subsidiary companies under the contracts which they made with the Metropolitan; it is sufficient limitation to hold that the mortgage covers only such as are limited to property or interests connected with the railroad system of the mortgagor. With such limitation the claims enumerated in lot 14 are covered by this mortgage. Some of these claims, however, are covered also by the mortgage to Guaranty Trust Company and are within the terms of the decree foreclosing that mortgage. They are also specifically enumerated in lot 1 as described in the decree in this suit, and should not be twice enumerated. Lot 14 should, therefore, be amended by striking out the claims under the eight leases listed in lot 1. What is left after such amendment should be sold with the other property covered by this mortgage.

### Lot 17.

This lot includes:

"Any and all demands, claims, contracts, rights, interests, notes, bonds, stocks, choses in action and all assets and property of every nature and description, real and personal, except cash in hand, including all interest of its receivers therein which belonged to or were of Metropolitan Street Railway Company on March 21, 1902, not hereinbefore in lots one to sixteen, both inclusive, specifically described and designated."

This of course does not include any claims against the leased lines already provided for. It is thought that the language above quoted from the mortgage was not intended to cover any "stocks" because it is immediately succeeded by an enumeration of shares of stock. With that word struck out this lot may be included in the sale.

### Lot 15.

This lot is described in the same language as lot 14, except that it is confined to such claims and rights of action against the enumerated lessor or subsidiary roads as "accrued to the Metropolitan Street Railway Company or its receivers subsequent to March 21, 1902 (the date of the mortgage)." It excludes everything included in lot 1.

The provisions of the mortgage covering after-acquired property are by no means as broad as those relating to property owned by the mortgagor at the date of execution. They are as follows:

181 F.—37

"And also all present or future improvements and additions made or to be made upon and to any or all of said railroads or property, real and personal, and any and all equipment therefor and renewals or replacements of the same or of any part thereof or of the appurtenances; and also all and every other railroad, which the railroad company shall hereafter acquire or construct by means of the proceeds of any of the bonds hereby secured, and all power houses, real estate, equipment and other property, real or personal appurtenant thereto.

"The railway company agrees and covenants that this indenture is and always will be kept a first lien upon all the premises and property described in the granting clauses hereof now owned by the railway company, and upon all property hereafter acquired by it in connection with such premises, and property, and upon all renewals and replacements of such property, and all additions, switches, side tracks, betterments and improvements thereto, subject only to existing liens."

The words relied upon by the complainant are "future improvements and additions to be made upon and to any and all of said property real and personal"; that is, to the "property" enumerated either in general or specific terms in the preceding clause which mortgages the "property" owned at the date of the mortgage. The claims themselves are not enumerated, but are, it is said, of the same general nature as those acquired by the Metropolitan before the execution of the mortgage. Some are for moneys expended subsequently for betterment or equipment of some leased line which under the terms of the lease the lessor was to repay. Others, it is suggested, are for balances due under some traffic agreement where a part of the receipts of some independent company, which used Metropolitan tracks, were to be turned over to the latter. Some, it may be, are for power sold, etc. The argument is that claims of the Metropolitan against all the street surface railway companies mentioned, whether leased or controlled by stock ownership, which accrued after the execution of the mortgage, are additions to the same general class of claims against subsidiary companies which were owned by the Metropolitan at the time the mortgage was executed, and as such "additions" are covered by its terms.

It is thought, although not without some doubt, that the language is broad enough to cover such claims against the subsidiary companies as "arise out of" or are connected with the subject-matter "of the leases or traffic agreements with such roads." The description should be amended accordingly, but the roads enumerated in lot 1 should be struck out of this lot.

## Lot 18.

This lot is in the same language as lot 17 except that it covers demands, etc., which "accrued to or were acquired by the Metropolitan or its receivers, subsequent to March 21, 1902 (the date of the mortgage)."

What these are is nowhere disclosed in the proposed decree. So far as they are claims against the subsidiary companies arising out of or connected with the subject-matter of the leases or traffic agreements, they are already provided for in lots 1 and 14. If they are not of this character, it would seem to put too severe a strain upon the after-acquired property clause to construe it as covering these on the theory that they are general "additions" to the personal property of the mortgagor. This lot should be withdrawn from the sale.

Lot 13.

This includes $50,000 bonds of the Twenty-Third Street Railway Company and $36,000 bonds of Forty-Second Street & Grand Street Ferry Railroad Company, all of which were bought subsequent to the execution of the mortgage. They are not "additions" within the meaning of that word as used in the after-acquired property clause. This lot should be withdrawn from sale.

Lot 16.

This lot includes:

"All the right, title and interest of Metropolitan Street Railway Company in and to any and all rent due or which may become due, and in and to each and every claim, demand, and right of action which may have accrued or may accrue to said Metropolitan Street Railway Company or its receivers under and by reason of a certain indenture of lease dated February 14, 1902, made by said Metropolitan Street Railway Company to Interurban Street Railway Company (now New York City Railway Company)."

This lease is expressly referred to in the mortgage which is made subject to the lease and to all and singular the provisions thereof. So long as the lessee avoids any breach of its covenants, possession under the lease cannot be disturbed, for the mortgage is subject to the burden of the lease. But it seems to have been the intention to bring within the lien of the mortgage all returns under the lease as long as it continues. If the lease be broken by the lessee, claims for damages would take the place of these uncollected returns; but the lien should attach to the damages as fully as it would to the returns. What amount of damages may be provable is a complicated question which it is not now necessary to decide.

The claims mentioned in lot 16 may be included in the sale.

Supplementary decree may be prepared in conformity with the views expressed in the memorandum.